IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TARAS DOBROV, on behalf of himself, individually, and on behalf of all others similarly situated, | )<br>)<br>)<br>) |
| Plaintiff, | ) Case No. 1:20-cv-314 |
| v. | )<br>) |
| HI-TECH PAINTLESS DENT REPAIR, INC. and MARK TSURKIS, | ) **JURY TRIAL DEMANDED**<br>) |
| Defendants. | ) |

## CLASS AND COLLECTIVE ACTION COMPLAINT

Taras Dobrov ("Dobrov" or "Plaintiff"), individually and on behalf of all others similarly situated, by and through his undersigned counsel, hereby makes the following allegations against Hi-Tech Paintless Dent Repair, Inc. ("Hi-Tech") and Mark Tsurkis ("Tsurkis" and, collectively with Hi-Tech, "Defendants"), upon personal knowledge as to himself and his own acts, and as for all other matters, upon information and belief, as follows:

## NATURE OF THE ACTION

1. Plaintiff brings this action to redress Defendants' systematic, companywide violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, the Illinois Minimum Wage Law ("IMWL"), 820 ILCS § 105, *et seq.*, and the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS § 115/1, *et seq.*, by knowingly misclassifying Plaintiff and other similarly situated hourly-paid repair technicians as independent contractors, knowingly failing to pay them overtime premium wages, and making unauthorized deductions from their wages.

1

2. Plaintiff brings his FLSA claims on a collective basis pursuant to 29 U.S.C. § 216(b) for all individuals who worked for Defendants as repair technicians at any point during the maximum limitations period (the "FLSA Collective").

3. Plaintiff brings his IMWL and IWPCA claims as a class pursuant to Fed. R. Civ. P. 23 for all Illinois residents who worked for Defendants as repair technicians at any point during the maximum limitations period (the "Illinois Class").

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to 29 U.S.C. § 216(b), which provides that claims under the FLSA "may be maintained against any employer … in any Federal or State court of competent jurisdiction."

5. This Court has federal question jurisdiction over this action pursuant to 29 U.S.C. § 1331.

6. This Court has supplemental jurisdiction over Plaintiff's IMWL and IWPCA claims pursuant to 28 U.S.C. § 1367 because these claims arise from the same occurrence or transaction as Plaintiff's FLSA claims and are so related to the FLSA claims as to form part of the same case or controversy.

7. Venue in this judicial District is proper under 28 U.S.C. § 1391(b)(2) because Plaintiff Dobrov resides in this District, Plaintiff Dobrov worked for Defendants in this District, Defendants do business within this District, Defendants are alleged to have engaged in the wrongful conduct at issue in this District, and a substantial part of the acts and omissions giving rise to Plaintiff's claims occurred within this District.

**PARTIES**

8. Plaintiff Taras Dobrov is an adult resident of the State of Illinois. Plaintiff Dobrov was employed by Defendants as a repair technician from approximately January 2012 until December 2018. Plaintiff Dobrov is personally familiar with, and was personally affected by, the policies and practices described in this Complaint.

9. Plaintiff Dobrov has consented in writing to be part of this action pursuant to 29 U.S.C. §216(b) of the FLSA. *See* Consent Form (Exhibit A).

10. Hi-Tech is an Illinois corporation that, upon information and belief, has its primary place of business and repair facility located at 1030 S. Milwaukee Ave., Wheeling, IL 60090. Hi-Tech also operates repair facilities and has operations in Illinois, Colorado, Texas, and Wyoming.

11. At all relevant times, Hi-Tech has employed repair technicians to provide paintless dent removal and hail damage repair to vehicles for individual customers, auto dealers, collision centers, insurance companies and manufacturers. As discussed more fully below, Hi-Tech is directly responsible for the operation of its business and for the policies, practices, and conduct at issue in this case.

12. Defendant Tsurkis is the CEO and founder of Hi-Tech. At all relevant times, Tsurkis has exercised operational control over Hi-Tech, controlled significant business functions of Hi-Tech, determined employee pay rates, made hiring decisions, and acted on behalf of and in the interest of Hi-Tech in devising, directing, implementing, and supervising the wage and hour practices and policies relating to Hi-Tech's employees. As such, at all relevant times, Defendant Tsurkis has been directly responsible for the operation of Hi-Tech's business and for the policies, practices, and conduct at issue in this case.

**FACTUAL ALLEGATIONS**

13. This action arises out of Defendants' systematic, company-wide misclassification of Plaintiff and other similarly-situated repair technicians as independent contractors and failure to pay them overtime compensation as required by the FLSA and IMWL and making unauthorized deductions from their wages in violation of the IWPCA. The affected employees worked for Defendants as repair technicians whose primary duties involved traveling throughout the United States to repair hail damage to vehicles.

14. Defendants hired Plaintiff and similarly-situated repair technicians in exchange for their agreement to receive training in paintless dent removal repair and work exclusively for the Defendants for at least five years.

15. At all relevant times, Defendants maintained a uniform corporate policy and practice of paying Plaintiff and similarly-situated repair technicians based on a percentage of the dollar amount invoiced for their services rendered to Defendants' customers, which varied approximately as follows:

   a. Year one – 50% commission of the invoiced amount;

   b. Year two – 55% commission of the invoiced amount;

   c. Year three – 60% commission of the invoiced amount;

   d. Year four – 65% commission of the invoiced amount; and

   e. Year five and thereafter – 70% commission of the invoiced amount.

16. Defendants trained Plaintiff and similarly-situated repair technicians to perform paintless dent removal services and provided the tools, forms, and equipment to perform those services.

17. Plaintiff and similarly-situated repair technicians did not have the knowledge, experience, or tools needed to provide the paintless dent removal services prior to their engagement by Defendants.

18. Defendants provided continuing training and I-CAR educational classes to Plaintiff and similarly-situated repair technicians to maintain their knowledge and expertise in collision repair services.

19. Plaintiff and similarly-situated repair technicians worked exclusively for Defendants on a full-time basis.

20. Defendants prohibited Plaintiff and similarly-situated repair technicians from providing their services to competing businesses.

21. Defendants exerted full control over Plaintiff's and similarly-situated repair technicians' services by controlling when, where, what, and how Plaintiff's services we rendered to Defendants' customers. Defendants directed Plaintiff and similarly-situated repair technicians as to whom and when to provide such services, which prices to charge for the services, and what and how to bill for the services rendered by requiring them to enter this information into Hi-Tech's billing software.

22. Defendants provided and paid for all marketing services. Defendants handled all customer communications and complaints, provided service scheduling, and controlled the timing, type, and extent of Plaintiff's and similarly-situated repair technicians' services.

23. Defendants assumed the risk of loss for Plaintiff's and similarly-situated repair technicians' services by providing written guarantees to their customers for the services rendered.

24. Defendants supplied Plaintiff and similarly-situated repair technicians with all of the documentation, pricing information, checklists, and branded estimate forms. For instance, on

September 27, 2016, Defendants circulated the "PDR pricing guideline for hail damage repair at partnering collision repair facilities," detailing the maximum charges that Plaintiff and similarly-situated repair technicians could apply for hail damaged panels. The letter also stated that "Hail Damage exceeding the above $ amounts needs to be approved by your local regional manager and authorized by the Collision Repair Center representative."

25. Defendants granted Plaintiff and similarly-situated repair technicians direct access to their billing and accounting system, into which Plaintiff and similarly-situated repair technicians entered their customers' names, dates, rates, service hours, and the description of services rendered.

26. Hi-Tech generated invoices based on the information Plaintiff and similarly-situated repair technicians entered directly into Hi-Tech's billing system.

27. Hi-Tech's payroll system calculated Plaintiff's and similarly-situated repair technicians' compensation based on the information they entered directly into Hi-Tech's billing system.

28. Defendants provided branded t-shirts and uniforms to Plaintiff and similarly-situated repair technicians and required them to wear those uniforms at all times they provided services to Defendants' customers.

29. Defendants presented their relationship with Plaintiff and similarly-situated repair technicians as that of an employer and employee and issued to Plaintiff and similarly-situated repair technicians their branded business cards with Hi-Tech's logo and contact information.

30. Defendants required Plaintiff and similarly-situated repair technicians to attend Defendants' annual corporate meetings and participate in group photographs wearing Defendants' branded uniforms.

31. Therefore, at all times relevant hereto, Plaintiff and similarly-situated repair technicians were "employees" of each of the Defendants as such term is defined by the FLSA, IMWL, and IWPCA.

32. Both Hi-Tech and Tsurkis are deemed "employers" of Plaintiff and similarly-situated repair technicians pursuant to the relevant provisions of the FLSA, IMWL, and IWPCA.

33. Defendants, however, devised a fraudulent scheme and instructed Plaintiff and similarly-situated repair technicians to (i) form separate companies; (ii) obtain employer identification numbers for their companies; and (iii) purchase separate workers compensation insurance in order to create an illusion of the independent contractor relationship.

34. Defendants also instituted an "administrative charge," regularly deducting fees ranging from $15 to $50 from Plaintiff's and similarly-situated repair technicians' paychecks to process their own invoices in order to create the illusion of the independent contractor relationship.

35. In many instances, Defendants entered into "Independent Contractor Agreements" with their employees that contained exclusivity, training, expense reimbursement, and five-year non-competition provisions common for employment relationships.

36. Defendants willfully devised the common scheme to misclassify Plaintiff and similarly-situated repair technicians as independent contractors to circumvent their obligation under the FLSA and IMWL to pay overtime wages and to circumvent the IWPCA's prohibition on unauthorized wage deductions.

37. Defendants directed Plaintiff and similarly-situated repair technicians to work, and they routinely did work, more than forty hours per week performing the paintless dent repair services described above.

38. Defendants routinely suffered and permitted Plaintiff and similarly-situated repair technicians to work overtime hours, but did not pay overtime wages earned at a rate of 1½ times their regular rate of pay for hours worked in excess of forty.

39. Defendants knew, or should have known, that Plaintiff and similarly-situated repair technicians performed work that required payment of overtime compensation because they assigned the work they performed, tracked the performance of those services, and required all repair technicians to complete documentation detailing their work and when the services were completed.

40. Defendants' failure to pay earned overtime wages was not in good faith, was willful, and done with reckless disregard for the rights of Plaintiff and similarly-situated repair technicians.

41. As a result of Defendants' conduct, Plaintiff and similarly-situated repair technicians have suffered damages.

## FLSA COLLECTIVE ACTION ALLEGATIONS

42. Plaintiff seeks to proceed as a collective action pursuant to the FLSA, 29 U.S.C. § 216(b), on behalf of himself and the following collective:

> All individuals who worked for Defendants as repair technicians at any time from three (3) years prior to the filing of this action to the entry of judgment (the "FLSA Collective").

43. Although Plaintiff and the FLSA Collective members may have worked in different job locations, this action may be properly maintained as a collective action because, among other things:

    a. They worked under the same material terms and conditions of employment;

    b. They performed the same primary job duty of traveling throughout

8

      the United States to repair hail damage to vehicles;

    c.    They received common training about their employment and the wage and hour policies and practices at issue here;

    d.    They were governed by the same compensation policies, practices and systems; and

    e.    They were governed by the same policies, practices, and systems concerning work hours and the performance of their work.

44. The similarly situated putative plaintiffs are known to Defendants, are readily identifiable, and may be located through Defendants' records. They may be readily notified of this action, and allowed to opt-in to this action pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their claims for unpaid overtime wages.

45. Pursuit of this action collectively will provide the most efficient mechanism for adjudicating the claims of Plaintiff and members of the FLSA Collective.

## ILLINOIS CLASS ACTION ALLEGATIONS

46. Plaintiff also seeks to maintain this action as a class action, pursuant to Fed. R. Civ. P. 23(a) and 23(b), on behalf of himself and all other similarly-situated Illinois residents who were employed by Defendants as repair technicians at any point during the maximum limitations period.

47. Plaintiff and other similarly-situated inside repair technicians all worked under common employment policies, were subject to the same compensation scheme, and were subject to the same practices challenged in this action as described above.

### Class Definition

48. Plaintiff seeks certification of a class consisting of the following individuals:

    All Illinois residents who worked for Defendants as repair technicians at any time during the maximum limitations period (hereinafter the "Illinois Class").[1]

---

[1] Plaintiff reserves the right to propose a different class definition or include sub-classes, if appropriate, after the completion of discovery. Under the IMWL, the statute of limitations is three years.

9

### Numerosity

49. Upon information and belief, more than 40 repair technicians were employed by Defendants in Illinois who were subject to the same practices challenged in this action as alleged above and not paid overtime compensation for hours worked in excess of 40 in given workweeks and subject to unauthorized wage deductions. Accordingly, Plaintiff satisfies the numerosity requirement as the Illinois Class is so numerous that joinder of all members is impracticable.

50. Members of the Illinois Class can be identified and located using Hi-Tech's "payroll system" and personnel records. Members of the Illinois Class may be informed of the pendency of this action by direct mail, email, text message, and/or published and broadcast notice.

### Commonality

51. There are questions of fact and law common to the Illinois Class members which predominate over questions affecting only individual members, if any. Plaintiff, the members of the Illinois Class, and Defendants have a commonality of interest in the subject matter and the remedy sought.

52. The questions of fact and law common to each class member arising from Defendants' actions include, but are not limited to, the following:

    a. Whether Defendants misclassified Illinois Class members as independent contractors in violation of the IMWL and IWPCA;

    a. Whether Illinois Class members were entitled to overtime compensation for hours worked over 40;

    b. Whether Defendants made unauthorized deductions from wages in violation of the IWPCA;

---

820 ILCS § 105/12, and under the IWPCA, the statute of limitations is ten years. *House v. Illinois Bell Tel. Co.*, 148 F. Supp. 3d 701, 705 (N.D. Ill. 2015).

      c.      Whether Defendants failed to keep true and accurate records of the hours worked by the Illinois Class members;

      d.      Whether Defendants' failure to pay overtime compensation was willful, repeated, or with reckless disregard of the IMWL; and

      e.      Whether Illinois Class members suffered damages and the proper measure of those damages.

53. If individual actions were required to be brought by each member of the Illinois Class injured or affected, the result would be a multiplicity of actions, creating a hardship to the Court, the Illinois Class and to the Defendants. Accordingly, a class action is an appropriate method for the fair and efficient adjudication of this lawsuit and distribution of the common fund to which the Illinois Class is entitled.

## **Typicality**

54. Plaintiff's claims are typical of the claims of the Illinois Class members he seeks to represent. As a result of Defendants' unlawful conduct, Plaintiff suffered similar injuries as those suffered by other members of the Illinois Class.

55. Upon information and belief, there are no other Illinois Class members who have an interest individually controlling the prosecution of his or her individual claims, especially in light of the difficulties involved in bringing individual litigation against one's employer. However, if any such Illinois Class member should become known, he or she can "opt out" of this action pursuant to Rule 23.

## **Adequacy**

56. Plaintiff is an adequate representative of the Illinois Class he seeks to represent because he is a member of the Illinois Class, and his interests do not conflict with the interests of the other members of the Illinois Class. The interests of each Illinois Class member will be fairly and adequately protected by Plaintiff and his undersigned counsel. Plaintiff has hired competent

attorneys who are experienced in class action litigation of this type and who are committed to the prosecution of this Action.

### Predominance and Superiority

57. The common questions identified above predominate over any individual issues, which will relate solely to the quantum of relief due to individual class members.

58. A class action is superior to other available means for the fair and efficient adjudication of this controversy because individual joinder of the parties is impracticable. Class action treatment will allow a large number of similarly-situated persons to prosecute their common claims in a single forum, simultaneously, efficiently, and without the unnecessary duplication of effort and expense if these claims were brought individually.

59. Moreover, the expenses and burden of individual litigation would make it difficult for each Illinois Class member to bring individual claims.

60. The presentation of separate actions by individual class members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendants and/or substantially impair or impede the ability of each Illinois Class member to protect his or her interests.

### COUNT I
### VIOLATION OF THE FAIR LABOR STANDARDS ACT
### 29 U.S.C. § 201, ET SEQ.
### FAILURE TO PAY OVERTIME WAGES

61. Plaintiff reasserts and realleges the allegations set forth in each of the above paragraphs as though fully set forth herein.

62. Each Defendant is an "Employer" as defined by 29 U.S.C. § 203(d).

63. Hi-Tech was, and is, subject to the overtime pay requirements of the FLSA because it is an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of 29 U.S.C. § 203(s)(1)(A).

64. Upon information and belief, the gross annual volume of sales made or business done by Hi-Tech for the years 2016 to the present has not been less than $500,000.00 each year.

65. Plaintiff and the FLSA Collective are "Employees" as defined by 29 U.S.C. § 203(e)(1).

66. The wages Defendants paid to Plaintiff and FLSA Collective members are "Wages" as defined by 29 U.S.C. § 203(m).

67. At all relevant times, Plaintiff and members of the FLSA Collective have been entitled to the rights, benefits, and protections granted by the FLSA, 29 U.S.C. § 207, *et seq*.

68. Section 207(a)(1) of the FLSA states that an employer must pay its employees overtime equal to at least one- and one-half times the employee's regular rate of pay, for all hours worked in excess of 40 in any given workweek.

69. By the above-alleged conduct, Defendants have violated the FLSA by failing to pay Plaintiff and members of the FLSA Collective overtime compensation as required by the FLSA.

70. Section 213 of the FLSA exempts certain categories of employees from the overtime compensation requirements set forth in Section 207(a)(1) of the FLSA. However, none of the Section 213 exemptions apply to the Plaintiff or the members of the FLSA Collective because they have not met the requirements for coverage under the exemptions.

71. Plaintiff and members of the FLSA Collective are victims of a uniform company-wide compensation policy that has deprived them of overtime wages in violation of the FLSA and thus are similarly-situated individuals within the meaning of 29 U.S.C. § 216(b).

72. Defendants have acted willfully and have either known that their conduct violated the FLSA or have shown reckless disregard for the matter of whether their conduct violated the FLSA. Defendants have not acted in good faith with respect to the conduct alleged herein.

73. As a direct and proximate result of Defendants' violations of the FLSA, Plaintiff and the members of the FLSA Collective have suffered harm and are entitled to recoup their unpaid wages in an amount to be determined at trial, along with an equal amount as liquidated damages and reasonable attorney's fees and costs of litigation, pursuant to 29 U.S.C. § 216(b).

## COUNT II
## VIOLATION OF ILLINOIS MINIMUM WAGE LAW
## 820 ILCS § 105, *et seq.*
## FAILURE TO PAY OVERTIME WAGES

74. Plaintiff reasserts and realleges the allegations set forth in each of the above paragraphs as though fully set forth herein.

75. Each Defendant is an "Employer" as defined by 820 ILCS § 105/3(c).

76. Plaintiff and the members of the Illinois Class are "Employees" as defined by 820 ILCS § 105/3(d).

77. The wages Defendants paid to Plaintiff and the members of the Illinois Class are "Wages" as defined by 820 ILCS § 105/3(b).

78. Plaintiff and the Illinois Class meet the requirements for certification and maintenance of a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

79. The IMWL, 820 ILCS § 105/4(a), provides that, with certain exceptions not applicable here, employers must pay employees 1½ times their regular rate for all hours worked in excess of 40 per workweek.

80. The IMWL, 820 ILCS § 105/12, provides that employers who violate the provisions of the act are liable to affected employees for unpaid wages, costs, attorneys' fees, treble damages,

and 5% of the amount of any such underpayment for each month following the date of underpayments, and other appropriate relief.

81. Defendants violated the IMWL, 820 ILCS § 105, by regularly and repeatedly failing to properly pay overtime wages to Plaintiff and the Illinois Class.

82. Defendants willfully violated the IMWL and acted with reckless disregard of clearly applicable IMWL provisions by knowingly suffering or permitting Plaintiff and the Illinois Class to regularly work more than 40 hours per week without ensuring they were paid the overtime premium rate for all hours in excess of 40 hours in accordance with Section 105/4(a) of the IMWL.

83. As a direct and proximate result of Defendants' violations of the IMWL, Plaintiff and the members of the Illinois Class have suffered harm and are entitled to recoup their unpaid wages in an amount to be determined at trial, along with reasonable attorneys' fees, costs, treble damages, damages of 5% of the amount of any such underpayment for each month following the date the payment was due and other appropriate relief, pursuant to 820 ILCS § 105/12.

## COUNT III
## VIOLATION OF THE ILLINOIS WAGE PAYMENT AND COLLECTION ACT
## 820 ILCS § 115/1, *et seq.*
## UNAUTHORIZED DEDUCTIONS TO WAGES

84. Plaintiff reasserts and realleges the allegations set forth in each of the above paragraphs as though fully set forth herein.

85. Each Defendant is an "Employer" as defined by 820 ILCS § 115/2.

86. Defendant Tsurkis is also an "Employer" as defined by 820 ILCS § 115/13.

87. Plaintiff and the Illinois Class members are "Employees" as defined by 820 ILCS § 115/2.

88. The wages Defendants paid to Plaintiff and the members of the Illinois Class are "Wages" as defined by 820 ILCS § 115/2.

89. Plaintiff and the Illinois Class meet the requirements for certification and maintenance of a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

90. The IWPCA, 820 ILCS § 115/9, prohibits deductions from wages "unless such deductions are (1) required by law; (2) to the benefit of the employee; (3) in response to a valid wage assignment or wage deduction order; [or] (4) made with the express written consent of the employee, given freely at the time the deduction is made …"

91. The IWPCA, 820 ILCS § 115/14, provides that employers who violate the provisions of the act are liable to affected employees for the amount of the underpayments and damages of 2% of the amount of any such underpayment for each month following the date of underpayments, and other appropriate relief.

92. Throughout the relevant period, Defendants were obligated to comply with the IWPCA's requirements, and Plaintiff and the Illinois Class members were covered employees entitled to the IWPCA's protections.

93. Defendants violated the IWPCA, 820 ILCS § 115/9, and acted with reckless disregard of clearly applicable IWPCA provisions knowingly, regularly and repeatedly deducting from the wages of Plaintiff and the Illinois Class certain "administrative charges" without prior written authorization from Plaintiff and the Illinois Class.

94. As a direct and proximate result of Defendants' violations of the IWPCA, Plaintiff and the members of the Illinois Class have suffered harm and are entitled to recoup their unlawfully deducted wages in an amount to be determined at trial, along with reasonable attorneys' fees, costs, damages of 2% of the amount of any such underpayment for each month following the date the payment was due and other appropriate relief, pursuant to 820 ILCS § 115/14.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Taras Dobrov, individually and on behalf of all others similarly situated, by and through his attorneys, demands judgment against Defendants and in favor of Plaintiff and all others similarly situated, for a sum that will properly, adequately and completely compensate Plaintiff and all others similarly situated for the nature, extent and duration of the damages, the costs of this action, and as follows:

A. Approve this matter to proceed as a collective action with respect to Count I;

B. Order Defendants to furnish to counsel a list of all names, telephone numbers, home addresses and email addresses of all FLSA Collective members who have worked for Defendants within the last three years;

C. Authorize Plaintiff's counsel to issue a notice at the earliest possible time to all FLSA Collective members who have worked for Defendants within the last three years, informing them that this action has been filed, of the nature of the action, and of their right to opt into this lawsuit if they worked in excess of forty (40) hours in a week during the liability period, for which they were not paid overtime in accordance with the FLSA and IMWL.

D. Certify this matter class action pursuant to Rule 23(a) and (b) of the Federal Rules of Civil Procedure and certify the Illinois Class as set forth above, with respect to Counts II and III;

E. Appoint Stephan Zouras, LLP and Lexern Law Group, Ltd. to serve as class counsel;

F. Award judgment in favor of Plaintiff and against Defendants for an amount equal to Plaintiff's and the FLSA Collective members' unpaid overtime compensation;

G. Award judgment in favor of Plaintiff and against Defendants for an amount equal to Plaintiff's and the Illinois Class Members' unpaid overtime compensation;

H. Award judgment in favor of Plaintiff and against Defendants for an amount equal to Plaintiff's and the Illinois Class Members unauthorized wage deductions;

I. Declare that Defendants' violations of the FLSA were willful;

J. Award Plaintiff and the members of the FLSA Collective liquidated damages in an amount equal to the amount of unpaid overtime found due in accordance with the FLSA;

K. Award Plaintiff and the members of the Illinois Class treble damages in accordance with the IMWL;

L. Award Plaintiff and the members of the Illinois class 5% of all wages due for each month accruing from the date such amounts were due until they are paid in accordance with the IMWL;

M. Award Plaintiff and the members of the Illinois Class 2% of all unauthorized wage deductions due for each month accruing from the date such amounts were due until they are paid in accordance with the IWPCA;

N. Award prejudgment interest for the FLSA claims (to the extent that liquidated damages are not awarded);

O. Award Plaintiff reasonable attorneys' fees and all costs of the collective action, to be paid by Defendants, in accordance with the FLSA;

P. Award Plaintiff reasonable attorneys' fees and all costs of the class action, to be paid by Defendants, in accordance with the IMWL and IWPCA;

Q. Award pre- and post- judgment interest and court costs as further allowed by the law;

R. Award a reasonable service award to the Plaintiff to compensate him for the time and effort spent protecting the interests of other repair technicians, and the risks he has undertaken;

S. Grant Plaintiff leave to add additional plaintiffs by motion, the filing of written consent forms, or any other method approved by the Court;

T. Grant Plaintiff leave to amend to add claims under applicable state and federal laws;

U. Provide additional general and equitable relief to which Plaintiff and the Illinois Class may be entitled; and

V. Provide further relief as the Court deems just and equitable.

### **DEMAND FOR A JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury.

| | |
|---|---|
| Dated: January 15, 2020 | Respectfully Submitted, |
| | /s/ *Teresa M. Becvar* |
| | James B. Zouras<br>Ryan F. Stephan<br>Teresa M. Becvar<br>Stephan Zouras, LLP<br>100 N. Riverside Plaza, Suite 2150<br>Chicago, Illinois 60606<br>312-233-1550<br>312-233-1560 f<br>jzouras@stephanzouras.com<br>rstephan@stephanzouras.com<br>tbecvar@stephanzouras.com |
| | Oleg N. Feldman<br>Lexern Law Group, Ltd.<br>100 South Saunders St., Suite 150<br>Lake Forest, Illinois 60045<br>(847) 777-6838<br>(847) 574-8008 f<br>oleg@lexern.com |
| | *Attorneys for the Plaintiff and the Putative Collective and Class* |

## CERTIFICATE OF SERVICE

    I, the attorney, hereby certify that on January 15, 2020, I filed the attached with the Clerk of the Court using the ECF system, which will send such filing to all attorneys of record.

                                            */s/ Teresa M. Becvar*