UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TARAS DOBROV, *individually and on behalf of a class*, | ) ) ) | |
| Plaintiff, | ) ) | No. 1:20-CV-00314 |
| v. | ) ) | Judge Edmond E. Chang |
| HI-TECH PAINTLESS DENT REPAIR, INC., and MARK TSURKIS, | ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Taras Dobrov, a car-repair technician, brings this proposed class action against Hi-Tech Paintless Dent Repair, Inc. and its CEO and founder, Mark Tsurkis, for misclassifying Dobrov and other technicians as "independent contractors" to avoid paying them owed overtime pay. Dobrov alleges that he "routinely" worked in excess of 40 hours per week but was not paid overtime and that the Defendants deducted unauthorized charges from his paycheck to simulate an independent-contractor relationship. He now seeks overtime wages under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 216(b), and the Illinois Minimum Wage Law (IMWL), 820 ILCS § 105/1, *et seq.*, as well as compensation for the unauthorized deductions under the Illinois Wage Payment and Collection Act (IWPCA), 820 ILCS § 115/1, *et seq.* R. 1, Compl.[1] The

---

[1] The Court has subject matter jurisdiction over the FLSA claim pursuant to 29 U.S.C. § 216(b) and § 1331 and supplemental jurisdiction over the IMWL and IWPCA claims under 28 U.S.C. § 1367. Citation to the docket is "R." followed by the entry number and, when necessary, the relevant page or paragraph number. For convenience's sake, the Opinion will refer to Hi-Tech as a shorthand for both of the Defendants, unless context dictates otherwise.

Defendants not only moved to dismiss Dobrov's complaint and to strike the collective and class allegations but also simultaneously filed a third-party complaint *against* Dobrov, alleging that Dobrov's company had impliedly indemnified them against Dobrov's charges. R. 30, Mot. Dismiss; R. 24, Third-Party Compl. Dobrov maintains that Defendants' third-party complaint is frivolous and has asked the Court to strike it and instead grant Dobrov leave to amend his original complaint to add allegations of retaliation. R. 39, Pl.'s Mot. Strike. For the reasons explained in this Opinion, the Court denies the remainder of Defendants' motion to dismiss (parts of it were already denied earlier, R. 29);[2] grants Dobrov's motion to dismiss the third-party complaint; and grants Dobrov's motion to add retaliation claims to his complaint.

## I. Background

For purposes of the Defendants' motion to dismiss, the Court accepts as true the allegations in the Complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Mark Tsurkis is the CEO and founder of Hi-Tech Paintless Dent Repair, an Illinois company that employs car-repair technicians to provide paintless dent removal and hail-damage repair. Compl. ¶ 11–12. Taras Dobrov worked for Hi-Tech as a repair technician from around January 2012 through December 2018. *Id*. ¶ 8.

Hi-Tech hired Dobrov and other repair technicians in exchange for their agreement to receive training in paintless dent removal repair and work exclusively for Hi-

---

[2]The Court has already denied the motion to dismiss to the extent that it argued that Dobrov lacked Article III standing (Argument § A of the motion) and the related request to strike collective and class allegations (Argument § C); the employer/employee argument (Argument § (B)(1)); the Rule 12(b)(7) indispensable party argument (Argument § C); and the commission-exemption argument (Argument § E). *See* R. 29.

Tech for at least five years. *Id.* ¶ 14. These technicians lacked prior knowledge or experience in those types of repairs, but Hi-Tech provided the relevant training, as well as the tools, forms, and equipment to perform the services commercially. *Id.* ¶¶ 16–17. Hi-Tech also provided continuing training and I-CAR educational classes to assist Dobrov and the other repair technicians with keeping their car-repair knowledge up-to-date. *Id.* ¶ 18.

Once trained, the repair technicians worked exclusively for Hi-Tech and were prohibited from providing services to competitors. Compl. ¶¶ 19–21. Hi-Tech exerted full control over their schedules, including "when, where, what, and how" their services were rendered to customers. *Id.* Hi-Tech dictated what prices were charged for services and "what and how" to bill for services rendered, and the technicians were required to enter this information into Hi-Tech's billing software directly. *Id.* ¶¶ 21, 24–25. Hi-Tech generated invoices based on the information supplied, and Dobrov and the other technicians were compensated based on a percentage of the amount invoiced for their services. *Id.* ¶¶ 15, 26. These rates were approximately as follows:

a. Year One – 50% commission of the invoiced amount;

b. Year Two – 55% commission of the invoiced amount;

c. Year Three – 60% commission of the invoiced amount;

d. Year Four – 65% commission of the invoiced amount;

e. Year Five and thereafter – 70% commission of the invoiced amount.

*Id.* ¶ 15.

Hi-Tech also provided and paid for all marketing services for Dobrov and the technicians. Compl. ¶ 22. These services included handling the customer communications and complaints, providing service scheduling, and controlling the timing, type, and extent of the technicians' services. *Id*. The company also provided the technicians with company-branded T-shirts and uniforms that the technicians had to wear at all times while providing repair services to customers. *Id*. ¶ 28. Technicians were even issued branded business cards with Hi-Tech's logo and contact information. *Id*. ¶ 29. On an annual basis, Hi-Tech required Dobrov and the other technicians to attend Hi-Tech's annual corporate meetings and to participate in group photographs wearing Hi-Tech's branded uniforms. *Id*. ¶ 30. Hi-Tech also assumed the risk of loss for the technicians' services by providing written guarantees to customers for the services rendered. *Id*. ¶ 23.

According to Dobrov, Hi-Tech designed a scheme to create the illusion that an independent-contractor relationship existed between Hi-Tech and technicians by requiring each of them: (1) to form separate companies; (2) to obtain employer identification numbers for their companies; and (3) to purchase separate worker-compensation insurance. Compl. ¶ 33. Hi-Tech also instituted an "administrative charge" ranging from $15 to $50 that the company deducted from their paychecks as a fee for processing invoices. *Id*. ¶ 34. "In many instances," Hi-Tech entered into "Independent Contractor Agreements" with the technicians "that contained exclusivity, training, expense reimbursements, and five-year non-competition provisions common for employment relationships." *Id*. ¶ 35.

4

Dobrov alleges that, at the Defendants' direction, the repair technicians "routinely" worked more than 40 hours per week providing repair services but were not paid overtime wages. Compl. ¶¶ 37–38. Dobrov now brings this litigation on behalf of himself and other repair technicians to recover the unpaid overtime wages under the FLSA and the IMWL, as well as to recover for the unauthorized deductions under the IWPCA. After the Defendants moved to dismiss the Complaint and to strike the collective and class allegations, the Court denied several parts of it. R. 29. The Defendants also filed a third-party complaint against Dobrov, alleging that Dobrov's company had impliedly indemnified the Defendants against wage suits like this one. R. 24. In response, Dobrov seeks to strike the third-party complaint and seeks leave to amend the Complaint to add retaliation claims. R. 39.

## II. Standard of Review

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up). The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on the technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions." *Iqbal*, 556 U.S. at 678-79.

As for adding to the complaint, a court may "permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). Such a motion is governed by the same standard as a motion to amend under Rule 15(a), and district courts "should freely give leave [to amend a complaint] when justice so requires." Fed. R. Civ. P. 15(a)(2). But leave to amend is not granted automatically. Se*e Airborne Beepers & Video Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 666 (7th Cir. 2007). Indeed, "[district] courts have broad discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile." *Johnson v. Cypress Hill*, 641 F.3d 867, 871–72 (7th Cir. 2011) (cleaned up); *see also Foman v.*

*Davis*, 371 U.S. 178, 182 (1962).[3] And while delay alone usually does not warrant denying leave to amend, the "longer the delay, the greater the presumption against granting leave to amend." *Johnson*, 641 F.3d at 872 (internal quotation marks and citation omitted).

### III. Analysis

### A. Defendants' Motion to Dismiss

Turning first to the defense's motion to dismiss, the remaining arguments are that the FLSA claims (Count 1), the IMWL claims (Count 2), and the IWPCA claims (Count 3) should be dismissed for failure to adequately state a claim for relief. The Court addresses each argument in turn.

### 1. FLSA

Under the Fair Labor Standards Act, employees—unless they are subject to an exemption—are entitled to receive overtime pay at a rate of 1½ times their hourly rate for all hours worked above the standard 40-hour workweek. 29 U.S.C. §§ 207, 213. "To state a claim for failure to pay overtime, a plaintiff must sufficiently allege forty hours of work in a given workweek as well as some uncompensated time in excess of forty hours." *Parks v. Speedy Title & Appraisal Review Servs.*, 318 F. Supp. 3d 1053, 1069 (N.D. Ill. 2018) (cleaned up). Although plaintiffs need not plead "infinitesimal details," they must provide "some specific facts to ground" their claims. *Bland v. Edward D. Jones & Co., L.P.*, 375 F. Supp. 3d 962, 979 (N.D. Ill 2019) (cleaned up).

---

[3] This opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

Here, Dobrov alleges that Hi-Tech failed to pay him, as well as other repair technicians, overtime for excess hours beyond 40 hours per week, despite the fact that technicians "routinely" worked overtime hours. Compl. ¶¶ 37–38. The defense's first argument is semantic wordplay: Hi-Tech argues that Dobrov supposedly contradicts himself because he variously describes himself as an "hourly-paid" employee and, at other times, as compensated according to a percentage of invoice totals. *Id.* ¶¶ 1, 15. As Dobrov rightly points out, however, the reference to "hourly-paid" simply refers to the fact that Dobrov's compensation must be converted to an average hourly pay, or "regular rate," to ultimately determine the overtime wages due and damages under the FLSA—if Hi-Tech is found liable. R. 36, Pl.'s Opp. Mot. Dismiss at 6 n.2; 29 C.F.R. § 778.109 ("The 'regular rate' under the [FLSA] is a rate per hour."). Thus there is no problem with contradictory allegations.

More substantively, the Defendants argue that the FLSA claim is insufficiently detailed because Dobrov fails to cite a *specific week or weeks* when he worked over 40 hours, and he does not allege how many total overtime hours he worked. Dobrov counters that the allegation that he worked overtime hours "routinely" alleges enough. This Court agrees. "This case, and wage cases generally, are not so complicated that they require significant factual allegations 'to present a story that holds together.'" *Sanchez v. Haltz Constr.*, 2012 WL 13514 at *3 (N.D. Ill. Jan. 2012) (citing *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010)). Ultimately the issue boils down to notice. It is not as though Dobrov alleged that he worked a single, unidentified week of overtime during a 20-year career—the discovery equivalent of asking

Defendants to find a needle in the haystack. To the contrary, Dobrov provided the limited timeframe for his employment (six years) and a frequency of the alleged overtime incidents ("routinely") that readily puts the Defendants on sufficient notice to investigate the claims. *See Eduarte v. Sliccily Pizza Pub., Inc.*, 2019 WL 2772528, at *3 (N.D. Ill. Jul. 2, 2019) (holding that the plaintiff need not allege more than the months he worked and that he was "routinely" required to work overtime without overtime pay); *Sanchez*, 2012 WL 13514 at *3 (allowing the plaintiffs' claims to survive where they alleged that they "routinely" worked overtime hours); *Victoria v. Alex Car., Inc.*, 2012 WL 1068759, at *5 (N.D. Ill. Mar. 29, 2012) (explaining that there is no requirement that plaintiffs must allege their hourly pay rate or the date of the alleged violations). So, although the word "routinely" might not provide mathematical precision, it is enough at the pleading stage.

The cases cited by the Defendants do not require a different outcome here. In *Trujillo v. Mediterranean Kitchens, Inc.*, 2017 WL 2958240, at *1 (N.D. Ill. Jul. 11, 2017), the FLSA claims were dismissed as adequately pled because the plaintiff offered no greater specificity than that he had worked "more than forty (40) hours weekly in one or more individual work weeks" without overtime pay during a 10-year period. That type of allegation sets up exactly the sort of needle-in-a-haystack notice issue that Dobrov's allegation does not present. Similarly in *Hughes v. Scarlett's G.P., Inc.*, the FLSA claims lacked the necessary specificity because the plaintiffs alleged only that "*[a]t such times* as Plaintiffs worked more than forty hours in a week (and each did), they were not paid time and a half." 2016 WL 4179153, at *2 (N.D. Ill. Aug.

8, 2016) (emphasis added). And in *Hirst v. Skywest, Inc.*, 910 F.3d 961, 966 (7th Cir. 2018), the Seventh Circuit held only that "a plaintiff alleging a [related FLSA] federal minimum wage violation must provide sufficient factual context to raise a plausible inference there was at least one workweek in which he or she was underpaid." Dobrov did that. Indeed, his allegations support that there were *many* weeks when he worked overtime but was denied overtime pay. Also, *Hirst* emphasized that plaintiffs "need not" plead specific dates to survive a motion to dismiss. *Id*. Only in *Bland v. Edward D. Jones & Co., L.P.* did another district court from this District conclude that the plaintiffs' allegations that they "routinely worked in excess of 40 hours per week … without receiving proper overtime pay" was insufficient under the FLSA because the court considered those allegations "formulaic and conclusory." 375 F. Supp. 3d at 982. For the notice reasons explained above, this Court concludes otherwise. The FLSA claim survives.

## 2. IMWL

Turning next to the claim under the Illinois Minimum Wage Law claim, those claims are analyzed in the same way as FLSA claims—requiring plaintiffs to plead that they worked more than 40 hours per week without corresponding overtime pay. The only wrinkle is that, because this claim is based on Illinois state law, the overtime claims must be based on work performed in Illinois. *Parks*, 318 F. Supp. 3d at 1069; *Hirst v. Skywest, Inc.*, 2016 WL 2986978, at *8 (N.D. Ill. May 24, 2016). "Because the IMWL is designed to protect employees within the State of Illinois only, it does not apply extraterritorially." *Hirst*, 2016 WL 2986978 at *8; *cf. Morrison v. Nat'l*

*Australia Bank Ltd.*, 561 U.S. 247, 255 (2010) ("When a statute gives no clear indication of an extraterritorial application, it has none.").

In light of the requirement that the IMWL claims arise in Illinois, Hi-Tech contends that Dobrov failed to adequately allege that he performed his overtime work in Illinois. Presumably, Hi-Tech is concerned that the Complaint alleges that the no-overtime policy "affected employees [who] worked for Defendants as repair technicians whose primary duties involved traveling *throughout the United States* to repair hail damage to vehicles." Compl. ¶ 13 (emphasis added); Mot. Dismiss at 9–10. Hi-Tech also argues that Dobrov did not allege (a) residency information for the entire duration of his alleged employment with Hi-Tech; (b) how many of his hours were reported in Illinois; (c) or whether he was paid in Illinois. Mot. Dismiss at 9–10. But the Complaint specifically alleges not only that Dobrov is an Illinois resident who performed work for Hi-Tech in this District within Illinois (which is also where Hi-Tech's principal place of business is located), but also that the "Defendants … engaged in the wrongful conduct at issue in this District, and a substantial part of the acts and omissions giving rise to Plaintiff's claims occurred within this District." Compl. ¶¶ 3, 7, 8, 10, 46. Hi-Tech demands much too much at the pleading stage in trying to suss out the specifics of the Illinois-based work. The IMWL claim remains intact.

### 3. IWPCA

Invoking the Illinois Wage Payment & Collection Act, Dobrov alleges that he was charged administrative fees by Hi-Tech without prior authorization and for the purpose of creating the illusion of an independent-contractor relationship. Compl.

11

¶¶ 34, 93. The Defendants contend that Dobrov failed to allege adequately that the parties had an underlying employment agreement that would entitle him to the IWPCA's wage protections. Mot. Dismiss at 12–14. It is true that the IWPCA "mandates payment of wages only to the extent that parties' contract or employment agreement requires such payment." *Deschepper v. Midwest Wine and Spirits, Inc.*, 84 F. Supp. 3d 767, 778 (N.D. Ill. 2015). "Thus, to state a claim under the IWPCA, a plaintiff must plead that wages or final compensation is due to him or her as an employee from an employer under an employment contract or agreement." *Id.* at 779 (cleaned up).

But an "'employment contract or agreement' under the IWPCA need not be formally negotiated or written." *Deschepper*, 84 F. Supp. 3d at 779 (citing *Hoffman v. RoadLink Workforce Solutions, LLC*, 2014 WL 3808938, at *4 (N.D. Ill. Aug. 1, 2014)). Instead, the law "requires only the manifestation of mutual assent," *Barker v. Atl. Pac. Lines*, 2013 WL 4401382, at *8 (N.D. Ill. Aug. 14, 2013), and employees and employers "can manifest their assent to conditions of employment by conduct alone." *Deschepper*, 84 F. Supp. 3d at 779. Hence, a plaintiff need only allege that "an entity paid a worker according to a demonstrable formula for work done" so as to "raise an inference that the entity and the worker had an employment agreement that embodied that formula." *Landers-Scelfo v. Corp. Office Sys., Inc.*, 827 N.E.2d 1051, 1058 (Ill. App. Ct. 2005).

Here, Dobrov *did* sufficiently allege an employment agreement. According to the Complaint, Hi-Tech "hired Plaintiff and similarly-situated repair technicians in

exchange for their agreement to receiving training in paintless dent removal repair and work exclusively for the Defendants for at least five years." Compl. ¶ 14. Not only that but "Defendants maintained a uniform corporate policy and practice of paying Plaintiff and similarly-situated repair technicians based on a percentage of the dollar amount invoiced for their services rendered to Defendants' customers" according to a specific formula that varied based on years worked. *Id*. ¶ 15. There thus was an implied employment agreement (at least as alleged at the pleading stage) entitling Dobrov and the other technicians to the IWPCA's wage protections. At this point, the Defendants have yet to argue that the "administrative charges" deducted were in any way consensual, let alone "(1) required by law; (2) to the benefit of the employee; (3) in response to a valid wage assignment or wage deduction order; [or] (4) made with the express written consent of the employee, given freely at the time the deduction is made," as they would need to be in order to be exempted from the IWPCA. 820 ILCS 115/9; *Costello v. BeavEx*, 810 F.3d 1045, 1050 (7th Cir. 2016). The IWPCA count thus survives too.

## B. Dobrov's Motion to Strike

Next up is Dobrov's motion to strike the Defendants' third-party complaint. That complaint seeks (1) a declaratory judgment that "Taras Dobrov is or was an employee of or worked directly for Tadova PDR"; and (2) indemnification from Tadova PDR—Taras Dobrov's company—for Dobrov's own claims against the Defendants. Third-Party Compl. ¶¶ 30–38. Dobrov maintains that neither of the Defendants' claims are "legally feasible and therefore must be dismissed." Pl.'s Mot. Strike at 5.

Third-party pleadings are governed by Federal Rule of Civil Procedure 14. The Rule authorizes defendants to turn into third-party plaintiffs: a "defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." Fed. R. Civ. P. 14(a)(1). In responding to a third-party complaint, Rule 14 allows any party to "move to strike [a] third-party claim, to sever it, or to try it separately." Fed. R. Civ. P. 14(a)(4). As the Advisory Committee Notes further explain,"[a]fter the third-party defendant is brought in, the court has discretion to strike the third-party claim if it is obviously unmeritorious and can only delay or prejudice the disposition of the plaintiff's claim[.]" *Id*., Advisory Comm. Notes (1963). Whether it is called a motion to "strike" or, really, a motion to dismiss, for purposes of determining whether to dismiss or strike a third-party complaint, the Court takes the Defendants' well-pled allegations as true. *Sidney S. Arst Co. v. Pipefitters Welfare Educ. Fund*, 25 F.3d 417, 419–20 (7th Cir. 1994).

Taking Count 2 first, the Defendants allege that Dobrov's company agreed to indemnify Hi-Tech for wage claims:

> Tadova PDR impliedly promised to defend, indemnify and hold Hi-Tech, its officers, owners, and directors, harmless from any losses damages, costs and expenses that arise out of, result from or relate to any breach by Tadova PDR of the independent contractor agreement and/or from any claims by any of Tadova PDR's officers, employees, agents, or contractors against Hi-Tech, its officers, owners, and directors for compensation or damages of any kind.

Third-Party Compl. ¶ 35. Based on this indemnity, the Defendants argue that "Dobrov['s] claims in the Originating Complaint, if true, would be a violation of Tadova

PDR's implied indemnification of Hi-Tech and Mark Tsurkis," and thus "Tadova PDR is responsible for any amounts that might be recovered by Plaintiff on his claims." *Id.* ¶¶ 36–37. So, yes, the Defendants are actually arguing that Dobrov (via his company) is liable to the Defendants for any overtime-pay violations that the Defendants may have committed against Dobrov.

Setting aside the complete lack of plausible allegations supporting the existence of an "implied indemnity" like that, if the Defendants' "interpretation of the indemnification [] were correct (which it is not), it would contravene federal law and be pre-empted by the Supremacy Clause of the Constitution." *Simpkins v. DuPage Housing Auth.*, 2017 WL 1231718, at *2 (N.D. Ill. Mar. 28, 2017). Specifically, there "is nothing in the FLSA or the IMWL that allows employers to bring an action against a third party to avoid its statutory responsibilities under these laws." *Strauss v. Italian Vill. Rest., Inc.*, 2012 WL 5389746, at *4 (N.D. Ill. Nov. 2, 2012). Instead, "[m]ultiple employers may be held liable under the FLSA when the facts establish that the employee is employed jointly by two or more employers." *Id.* at *2 (quotation omitted). "[T]o engraft an indemnity action upon this otherwise comprehensive federal statute would run afoul of the Supremacy Clause of the Constitution, would undermine employers' incentive to abide by the [FLSA], and would differentiate among employees entitled to receive overtime compensation in a way which does not otherwise exist in the statute." *Simpkins v. DuPage Housing Auth.*, 2017 WL 1231718, at *2 (N.D. Ill. Mar. 28, 2017) (cleaned up) (citing *LeCompte v. Chrysler Credit Corp.*, 780 F.2d 1260, 1264 (5th Cir. 1986)). In other words, a claim for indemnity "would frustrate

Congress' purpose in enacting the FLSA, since an employer who believed that any violation of the statute's overtime or minimum wage provisions could be recovered from its employees would have a diminished incentive to comply with the statute." *Emanuel v. Rolling in the Dough, Inc.*, 2010 WL 4627661, at *3 (N.D. Ill. Nov. 2, 2010).

"While the Seventh Circuit has not yet addressed the issue [of indemnification directly], other courts of appeals have rejected claims seeking indemnity or contribution for FLSA liability." *Id.* (citing *LeCompte*, 780 F.2d at 1264; *Lyle v. Food Lion*, 954 F.2d 984, 987 (4th Cir. 1992) (affirming dismissal of an employer's counterclaim and third-party complaint for indemnity against the plaintiff for the plaintiff's FLSA claims); *Martin v. Gingerbread House, Inc.*, 977 F.2d 1405, 1408 (10th Cir. 1992) (holding that an employer's third-party complaint seeking indemnity from employee for alleged FLSA violations was preempted); *Herman v. RSR Sec. Services Ltd.*, 172 F.3d 132, 144 (2d Cir. 1999) (affirming dismissal of corporate chairman's claims for contribution and indemnification against his-co-owner and the corporation's manager and vice president)); *see also Scalia v. Employer Sols. Staffing Grp., LLC*, 951 F.3d 1097, 1105 (9th Cir. 2020) (rejecting an implied cause of action for contribution or indemnification under the FLSA or federal common law).

Aside from the weight of authority in the other Circuits, district courts routinely dismiss these sorts of indemnity claims here. *Simpkins,* 2017 WL 1231718, at *1–2 (dismissing indemnity claim because it conflicted with the purpose of the FLSA and was preempted by federal law); *Strauss*, 2012 WL 5389746, at *4 (dismissing

indemnity claims and finding that the FLSA and IMWL do not allow employers to avoid statutory responsibilities by brining actions against third-parties); *Emanuel*, 2010 WL 4627661, at \*3–4 (dismissing indemnity claims because they are preempted by federal law and not cognizable); *Villareal v. El Chile, Inc.*, 601 F. Supp. 2d 1011, 1015–16 (N.D. Ill. 2009) (dismissing counterclaim for indemnity).

In support of their claim for "implied indemnity," then, the only authorities that the Defendants rely on are the district courts' decisions in *Costello v. BeavEx Inc.*, 2013 WL 2156052, at \*3 (N.D. Ill. May 17, 2013), and *Brown v. Club Assist Rd. Serv. U.S., Inc.*, 2015 WL 13650775, at \*5 (N.D. Ill. Mar. 13, 2015). But neither case concerned any "implied" indemnity under the FLSA; to the contrary, both cases examined *contractual* indemnity clauses. Nor did *Costello* even involve a violation of the FLSA, so the court never examined the unlikelihood that the FLSA would permit indemnity.

Because there is no basis for the Defendants' "implied indemnity" theory, and only a legal theory that states "a plausible claim for relief survives a motion to dismiss," the indemnity claim is dismissed. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although it is difficult to imagine how Hi-Tech can fix the allegations to adequately state a claim, because it was the first version of the third-party complaint, the dismissal (for now) is without prejudice. If Hi-Tech is unable to propose a viable claim along these lines by the to-be-set Rule 16(b) deadline to add parties, then the dismissal will automatically convert to a dismissal with prejudice.

With regard to the declaratory judgment claim (Count 1)—in which the Defendants seek a declaration that Dobrov "is or was an employee of … Tadova PDR"—in the absence of an operative theory of indemnity, the declaration sought has no independent legal significance. Of course, in defending against Dobrov's overtime claims, the Defendants remain free to argue that Dobrov is not an employee of theirs. But the request for a declaration as to Dobrov and Tadova does not present a case or controversy without a theory of indemnity. Count 1 is dismissed without prejudice for lack of subject matter jurisdiction.

## C. Dobrov's Motion to Supplement

Lastly, Dobrov asks to amend the Complaint to add allegations that the Defendants retaliated against him by filing the Third-Party Complaint, in violation of the FLSA, 29 U.S.C. § 215(a)(3), and the IWPCA, 820 ILCS 115/14(c). R. 39 at 9. This actually is a motion to file a *supplemental* claim under Civil Rule 15(d), because the alleged retaliation happened after the filing of the original Complaint. As explained earlier, Rule 15(d) authorizes courts to "permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). A motion to file a supplemental claim is governed by the same standard as a motion to amend under Rule 15(a), and district courts "should freely give leave [to amend a complaint] when justice so requires." Fed. R. Civ. P. 15(a)(2).

The Defendants object to the filing of a retaliation claim, arguing that it would be brought "in bad faith" and would be "futile." R. 42, Defs.' Resp. to Opp. at 11. To

state a viable retaliation claim under the FLSA and the IWPCA, a plaintiff must allege that "he engaged in activity protected under the Act, that his employer took an adverse employment action against him, and a causal link exists between the two." *Sloan v. American Brian Tumor Assoc.*, 901 F.3d 891, 894 (7th Cir. 2018).Within this framework, and given the First Amendment right of access to the courts, the filing of a lawsuit generally does not qualify as an "adverse employment action"—unless the lawsuit is motivated by retaliatory animus and the suit is baseless. *Bill Johnson's Restaurants, Inc. v. National Labor Relations Bd.*, 461 U.S. 731, 743–44 (1983). Courts have recognized that "an employer's lawsuit filed with a retaliatory motive rather than in good faith may constitute an adverse action and provide a basis for a retaliation claim." *Beltran v. Brentwood North Healthcare Center, LLC*, 426 F. Supp. 2d 827, 833 (N.D. Ill. 2006). And more generally, "adverse action[s]" are those that "could well dissuade" a reasonable worker from making or supporting a charge of discrimination. *Burlington Northern & Santa Fe Railway Co. v. White*, 584 U.S. 53, 57 (2006); *see also Washington v. Ill. Dep't of Revenue*, 420 F.3d 658, 662 (7th Cir. 2005).

Dobrov's proposed retaliation claim of course would be premised on the protected activity of filing the original Complaint, and also on the fact that the Defendants of course knew about the Complaint when they filed the Third-Party Complaint. On causation, Dobov argues that it can be inferred from the timing of the protected activity (filing the lawsuit on January 15, 2020) and the adverse action (filing the Third-Party Complaint on May 15, 2020). Dobrov labels that timing as being "very

close." *Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447, 474 (S.D.N.Y. 2008) (quoting *Clark Cty. School Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001)). According to Dobrov, the Third-Party Complaint was "baseless" because it asserted, in essence, that *he* was liable to the *Defendants* for wage violations that they committed against him.

These allegations, taken as true, are sufficient to allow Dobrov to file the supplemental claim. Based on Dobrov's allegations, Tadova PDR was created on the Defendants' instruction, with Taras Dobrov as its sole employee, so it was frivolous and baseless for the Defendants to assert that Tadova PDR owed Hi-Tech for wage violations. This is enough at least to *file* the supplemental claim. It is better to then get the usual three briefs on whether the claim is adequately stated under Rule 12(b)(6). So the Defendants will be permitted to file a motion to dismiss the new retaliation claim after it is filed.

## IV. Conclusion

The Court denies the remainder of the Defendants' motion to dismiss, R. 30, grants Dobrov's motion to dismiss the Third-Party Complaint, R. 39; and grants Dobrov's motion to file a supplemental claim for retaliation, R. 39. The supplemental pleading must be filed on the docket as a separate entry by April 9, 2021. The answer or Rule 12 motion on the supplemental pleading is due by April 30, 2021. But the remainder of the original claims shall move forward. The Defendants shall answer the original Complaint by April 21, 2021. The parties shall confer and a file a joint status report proposing a discovery schedule by April 26, 2021. The tracking status

hearing of April 9, 2021, is reset to April 30, 2021, at 8:30 a.m., but to track the case only (no appearance is required). Instead, the Court will set the discovery schedule based on the status report.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: March 31, 2021