**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| TARAS DOBROV, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 1:20-CV-00314 |
| v. | ) | |
| | ) | |
| HI-TECH PAINTLESS DENT REPAIR, | ) | Judge Edmond E. Chang |
| INC. and MARK TSURKIS, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Taras Dobrov, a car-repair technician, brought a proposed class and collective action against Hi-Tech Paintless Dent Repair, Inc., and its CEO and founder, Mark Tsurkis, for allegedly misclassifying Dobrov and other technicians as independent contractors to avoid paying them owed overtime pay. R. 1, Compl.[1] Dobrov seeks overtime wages and other deducted wages under the Fair Labor Standards Act, 29 U.S.C. § 216(b) (commonly referred to as the FLSA), the Illinois Minimum Wage Law, 820 ILCS § 105/1 *et seq.*, and the Illinois Wage Payment and Collection Act, 820 ILCS § 115/1 *et seq. Id.* Hi-Tech and Tsurkis move for summary judgment on all claims. R. 122, Defs.' Mot.[2] As explained below, the Defendants' motion is denied.

---

[1]The Court has subject matter jurisdiction over the FLSA claim under 29 U.S.C. § 216(b) and § 1331 and supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367. Citation to the docket is "R." followed by the entry number and, when necessary, the relevant page or paragraph number.

[2]As addressed below, the Defendants ask the Court for summary judgment on all claims, and also ask the Court to relinquish jurisdiction over the state law claims if the motion for summary judgment on the FLSA claim is granted. R. 123, Defs.' Br. at 1–2.

## I. Background

In deciding the Defendants' motion for summary judgment, the Court views the evidence in the light most favorable to the non-moving party, Taras Dobrov. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Hi-Tech contracts with auto-body shops, collision centers, automotive repair centers, and auto dealerships to provide paintless dent repair services for dents caused by hail. R. 124, DSOF ¶ 1.[3] According to Dobrov, after he was hired by Hi-Tech as a car-repair technician, Hi-Tech instructed Dobrov to form a separate company, Tadova PDR Company, obtain an employer identification number for the company, and purchase workers compensation insurance from an external vendor. R. 131, PSOF ¶ 3; R. 131-1, Dobrov Decl. ¶ 5. Dobrov alleges that this scheme was designed to create the illusion of an independent-contractor relationship between Hi-Tech and technicians. R. 129, Pl.'s Resp. at 2, 8. For its part, Hi-Tech describes this arrangement as "subcontracting" with paintless dent-repair services companies to supply the repair services to its customers. R. 123, Defs.' Br. at 3. The parties agree that there was a written contract between Dobrov and Hi-Tech, but neither side can locate a copy of the contract, and Hi-Tech has not provided a substitute, such as a similar contract that it entered into with other technicians in the same time period. R. 136, Defs.' Resp. PSOF ¶ 1; Dobrov Decl. ¶ 4. According to Dobrov, he agreed to work exclusively for Hi-Tech for at least five years, in exchange for training as a paintless dent repair technician. *Id.*

---

[3]Dobrov disputes these facts for failure to cite to supporting evidentiary material, R. 130, Pl.'s Resp. DSOF ¶ 1, but he made the same allegations in his Complaint, *see* Compl. ¶ 8.

Hi-Tech maintains a roster of between 500 and 1,000 active technicians, and the company contacts the technicians to perform paintless dent-repair services when hailstorms strike. Pl.'s Resp. DSOF ¶ 12; R. 124-2, Tsurkis Dep. at 33:1–22; R. 124-4, Opanasyuk Dep. at 42:1–21. During hailstorm high season, the average number of technicians working on projects is between 100 and 400. *Id.* Technicians are paid according to the number of vehicles that the technician repairs. Pl.'s Resp. DSOF ¶ 17; Tsurkis Dep. 67: 9–16, 84:10–85:15; Opanasyuk Dep. at 143: 15–144:5. Hi-Tech paid Dobrov and other technicians on a commission basis for their work (between 50% and 70%, depending on years of experience). Pl.'s Resp. DSOF ¶ 15; R.124-1, Defs.' Answer ¶ 15. Hi-Tech withheld administrative fees from Dobrov's pay. PSOF ¶ 23; R. 131-2, Pl.'s Resp. to Interrogatories at 6; Opanasyuk Dep. at 130:15–19. Dobrov challenges Hi-Tech's classification of him as an independent contractor, and seeks overtime pay and other withheld pay under the FLSA and Illinois state law. Hi-Tech and Tsurkis move for summary judgment on all claims, arguing that they are entitled to judgment as a matter of law that Dobrov was an independent contractor.

## II. Standard of Review

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences

3

in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The Court may not weigh conflicting evidence or make credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011), and must consider only evidence that can "be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter of law. *Carmichael v. Village of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). If this burden is met, the adverse party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

### III. Analysis

### A. Fair Labor Standards Act

The sole question at issue in the motion for summary judgment is whether Dobrov was Hi-Tech's employee or instead was an independent contractor. Under the FLSA, an employee is (unhelpfully) defined as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). To determine who is an employee covered by the FLSA, courts "look … to the economic reality of the working relationship." *Brant v. Schneider Nat'l, Inc.*, 43 F.4th 656, 665 (7th Cir. 2022) (cleaned up).[4] Even if there is a contractual agreement between the parties, "the terms of a contract do not control the

---

[4] This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

4

employer-employee issue under the Act." *Id.*; *see Rutherford Food Corp. v. McComb*, 331 U.S. 722, 729 (1947) (explaining that the use of the "independent contractor" label does not remove FLSA protections when work "follows the usual path of an employee"); *Secretary of Labor v. Lauritzen*, 835 F.2d 1529, 1544–45 (7th Cir. 1987) (Easterbrook, J., concurring) ("The FLSA is designed to defeat rather than implement contractual arrangements.").

Six factors laid out in by the Seventh Circuit in *Lauritzen* aid the court in determining whether a worker is an employee within the meaning of the FLSA:

- (1.) the nature and degree of the alleged employer's control as to the manner in which the work is to be performed;

- (2.) the alleged employee's opportunity for profit or loss depending upon his managerial skill;

- (3.) the alleged employee's investment in equipment or materials required for his task, or his employment of workers;

- (4.) whether the service rendered requires a special skill;

- (5.) the degree of permanency and duration of the working relationship;

- (6.) the extent to which the service rendered is an integral part of the alleged employer's business.

835 F.2d at 1535; *see Brant*, 43 F.4th at 665. That said, "none of the individual factors set forth in *Lauritzen* and its progeny are dispositive of the ultimate determination, which is the economic reality of the relationship." *Simpkins v. DuPage Housing Auth.*, 893 F.3d 962, 965 (7th Cir. 2018). Although the determination of an employee's covered status under the FLSA is ultimately a question of law, the material facts

5

underlying this determination may be disputed, precluding summary judgment. *Id*. Here, the parties' submissions create that type of dispute, and neither side wins summary judgment.

The record is mixed on Hi-Tech's control over the "manner in which the work is to be performed." *Lauritzen*, 835 F.2d at 1535. There is some evidence—but not conclusive evidence—that Hi-Tech oversaw how Dobrov actually performed his work. Dobrov avers that Hi-Tech required technicians to follow detailed repair procedures, and he cites a technician manual from 2015. PSOF ¶ 10; R. 131-4, Exh. D.[5] The manual outlines expectations on dress code, client communication, pricing, damage, repair procedures, and causes for termination, and includes a post-repair inspection list. *Id*.

But the manual does *not* specify exactly how technicians should perform their work, for example by dictating which tools Dobrov must use, or how the paintless dent repair-services should be performed. *See, e.g.*, *Perez v. Super Maid, LLC*, 55 F. Supp. 3d 1065, 1076–77 (N.D. Ill. 2014) (weighing in favor of control when the employer dictated the products and methods to be used at work). PSOF, Exh D. Dobrov also argues that Hi-Tech had control over his own work because Tsurkis and Bo Opanasyuk, a regional account manager for Hi-Tech, oversaw technicians' work by visiting worksites, inspecting projects, and monitoring technicians' clothing. PSOF

---

[5] Hi-Tech and Tsurkis argue that the manual is inadmissible because it is outside of the relevant statutory period, lacks authentication, and lacks foundation. Defs.' Resp. PSOF ¶ 10. The Court may only consider evidence that can "be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Because Dobrov could lay the foundation for this manual at trial, the Court will consider it at the summary judgment stage.

¶¶ 13–14; Tsurkis Dep. at 11:1–12:23; Opanasyuk Dep. at 54:1–11, 140:24–141:24. But this evidence lacks specifics about the extent, frequency, or nature of this supervision. *See id.* Finally, Dobrov argues, and Hi-Tech largely concedes, that Hi-Tech controlled the advertising and solicitation of customers, pricing, billing, and negotiation with customers, and handled customer communication and complaints. Defs.' Resp. PSOF ¶¶ 7–9; R. 131-3, Exh. C; Dobrov Decl. ¶¶ 12–13; Tsurkis Dep. at 94:18–97:9. Opanasyuk Tr. at 70:11–72:12, 114:23–115:13, 118:10–120:15. But again, these facts about Hi-Tech's outward facing communication with clients do not go to control over the *manner* in which Dobrov performed his work.

Crucially, though, there is a factual dispute over whether Dobrov could work for competitors. *See* Defs.' Resp. PSOF ¶¶ 1–2; Dobrov Decl. ¶¶ 3–4, 7–8. Dobrov avers that when he was hired at Hi-Tech, he agreed to work exclusively for Hi-Tech for at least five years in exchange for the training that he received from Hi-Tech, and he in fact worked exclusively for Hi-Tech from January 2012 to December 2018. Dobrov Decl. ¶¶ 3–4, 7. He also avers that he was "prohibited" from working for competing businesses during the April through November (or through December) work season, and Dobrov also asserts that "there was a good chance [he] would not get another assignment" in the season if he turned down work. *Id.* ¶ 8; R. 124-3, Dobrov Dep. at 22:11–23:3. It is true that Dobrov's declaration on the important question of whether he could work for competitors lacks detail: Dobrov merely avers that he could not, but he does not explain whether that was mandated by his employment agreement, expressed to him verbally by a supervisor or colleague, or just a practical reflection of

7

how busy his business was with Hi-Tech. *See id.* At trial, Dobrov would have to lay a more precise foundation for this statement and provide more details, such as the time period and circumstances of the prohibition. But given that whether Dobrov could work for competitors is a fact within his personal knowledge, the statement that he could not is sufficient for summary judgment purposes.[6] Viewing the evidence in the light most favorable to Dobrov, a reasonable juror could conclude that Hi-Tech controlled Dobrov's work, favoring the conclusion that he was an employee.

For much the same reason, the record also supports that Dobrov did not have an opportunity to make a profit or to suffer a loss that was dependent on his managerial skill or job performance. *Lauritzen*, 835 F.2d at 1535. (The chance to apply skill to turn a profit would weigh in favor of independent-contractor status.) Again, Dobrov avers that he was prohibited from providing his services to competing businesses, and also that he was unable to hire other workers to assist him in his work, and unable to turn down individual repair jobs from Hi-Tech. PSOF ¶¶ 24–25; Dobrov Decl. ¶¶ 8, 10–11; Opanasyuk Dep. at 126:19–127:6. All of that would constrain his ability to make a profit. It is true that, just as his assertion that he was prohibited from working for other employers lacks detail, so too does Dobrov's statement that he was "required to complete the repair jobs" assigned. Dobrov Decl. ¶¶ 8, 10; *see* Dobrov Dep. at 22:20-23, 23:1-3 (responding "[n]o, but there was a good chance I would not get

---

[6]Hi-Tech and Tsurkis also challenge Dobrov's declaration as self-serving. R. 135, Defs.' Reply at 3. As the Seventh Circuit has "repeatedly emphasized … the term 'selfserving' must not be used to denigrate perfectly admissible evidence through which a party tries to present its side of the story at summary judgment." *Hill v. Tangherlini*, 724 F.3d 965, 967 (7th Cir. 2013).

another assignment this season" when asked whether he would be fired if he did not take a job). Still, viewed in the light most favorable to Dobrov, the evidence supports the conclusion that Dobrov did not have managerial control over his profits, and the facts presented are material and disputed by Hi-Tech. *See* Defs.' Resp. PSOF ¶¶ 24–25.

The record is also mixed on Dobrov's investment in equipment that was required for his work. At the start of their relationship, Hi-Tech provided tools (costing up to $15,000) to Dobrov at no initial cost and Dobrov then paid Hi-Tech back over time through the commissions that he received for his work. DSOF ¶ 43; Pl.'s Resp. DSOF ¶ 27; Tsurkis Dep. at 102:4–104:5; Opanasyuk Dep. at 135:20–136:12; Dobrov Dep. at 30:8–32:3. Under Seventh Circuit precedent, when there is "no down payment required, no payments during the first weeks of work, and no out-of-pocket investment," even if the worker is on a payment plan to repay for equipment, the arrangement "weighs in favor of employee status." *Brant*, 43 F.4th at 670–71. But Hi-Tech also presents evidence from Dobrov's 2017 and 2018 tax returns, which include claimed business expenses for tools, and over $77,000 in "R&I" which Dobrov testified was spent on tools and equipment for his work as a technician (although it was not categorized as such on his tax return). Pl.'s Resp. DSOF ¶¶ 51–52, 54; Dobrov Dep. at 50:5–52:8. So there is a genuine dispute of material fact as to whether Dobrov made a significant investment in materials (outside of those provided upfront by Hi-Tech) that would favor the conclusion that Dobrov was an independent contractor, or

9

instead, an employee. At this stage, a reasonable juror could conclude that this factor weighs in favor of an employer-employee relationship.

Next, the record suggests that paintless dent-repair requires special skill. Tsurkis testified that it takes about one year to understand "the basics," three years "to get good," and five "to get real good." Defs.' Resp. PSOF ¶ 9; Tsurkis Dep. at 30:19–22. Dobrov has not presented any contrary evidence that a layperson can complete the tasks of a technician, and conceded that it takes at least a year to understand the basics. Pl.'s Resp. at 15–16. But how Dobrov used the specialized skill here does not necessarily fit with the underlying reason *why* special skills matter when evaluating an employment relationship: "[s]pecial skills weigh in favor of independent contractor status partly because independent contractors often develop relationships with many businesses based on expertise and can command higher rates through superior performance." *Brant*, 43 F.4th at 671. Here, Dobrov was trained by Hi-Tech and never worked for any other businesses, PSOF ¶ 6; Dobrov Decl. ¶ 6, let alone "many" business, *Brant*, 43 F.4th at 671. At the summary judgment stage, inferences go in favor of Dobrov, and a reasonable juror could find that this factor tips in favor of an employer-employee relationship.

On the fifth factor, the more permanent and longer a working relationship is, the more likely it is an employer-employee one. *Lauritzen*, 835 F.2d at 1535 This may be true even when work is seasonal, so long as the relationship "is permanent and exclusive for the duration of that … season." *Id.* at 1537. As already addressed, the parties dispute whether Dobrov was required to work exclusively for Hi-Tech during

10

the work season of April to November or December. The record supports that the working relationship between Dobrov and Hi-Tech lasted at least six years, and just because there was a regular off season does not defeat the employer-employee conclusion. *See id.* Viewing the record in the light most favorable to Dobrov, a reasonable juror could conclude that this factor favors an employer-employee relationship.

On the sixth factor—whether the service rendered is an integral part of the alleged employer's business—Hi-Tech and Tsurkis concede that that this factor favors Dobrov, because paintless dent-repair services are integral to Hi-Tech's business. Defs.' Br. at 10. It indeed *is* Hi-Tech's business.

In sum, "the summary judgment record presents numerous factual disputes that are material to the determination of the true economic relationship between [Dobrov] and [Hi-Tech]." *Simpkins*, 893 F.3d at 967. And where there are not genuine factual disputes, some of the factors favor the conclusion that the parties had an employer-employee relationship. So Hi-Tech and Tsurkis have not shown that they are entitled to judgment as a matter of law that Dobrov was an independent contractor.

### B. State Law Claims

Hi-Tech and Tsurkis ask the Court to grant their motion for summary judgment on the FLSA claim, and then relinquish jurisdiction over the state law claims. Defs.' Br. at 1–2. But the Defendants also state that their arguments "are equally applicable" to the state law claims, and that "if Plaintiff's federal claims fail, so too, do his state law claims." *Id.* at 2 n.1; *see id.* at 6 (briefing arguments about both the FLSA and the state law claims). Because the motion for summary judgment on the

11

FLSA claim is denied, the Court retains jurisdiction over the state law claims, and briefly addresses the parties' dispute on the interpretation of the state law claims.

Hi-Tech and Tsurkis did not make any arguments separate from the FLSA claim that is specific to the Illinois Minimum Wage Law or the Illinois Wage Payment Collection Act. *See* Defs.' Br. Indeed, the Illinois Minimum Wage Law follows the FLSA definition of employee. *See Callahan v. City of Chicago*, 78 F. Supp. 3d 791, 821 (N.D. Ill. 2015); Ill. Admin. Code tit. 56, §§ 210.110, 210.120. But Dobrov is correct that the Illinois Wage Payment Collection Act does not: the definition of an employee is different, and arguably broader under the Wage Payment Collection Act. 820 ILCS 115/2; *Costello v. BeavEx, Inc.* 810 F.3d 1045, 1050 (7th Cir. 2016); *see* Pl.'s Resp. at 7. The Defendants' motion for summary judgment on the Minimum Wage Law claim is thus denied on the same grounds as the FLSA claim, and the Wage Payment Collection Act motion is denied because the Defendants failed to make any argument under that statute in their motion or opening brief.[7]

---

[7] The Defendants raise, for the first time, in their reply brief that the Wage Payment Collection Act claim fails because there is no employment agreement between Dobrov and Hi-Tech giving Dobrov a right to any compensation beyond what he already received, but offer no facts in support of this argument. *See* Reply at 1–2.

## IV. Conclusion

Because Hi-Tech and Tsurkis have failed to show that they are entitled to judgment as a matter of law on Dobrov's claims, their motion for summary judgment is denied. The parties shall start settlement negotiations and otherwise confer on the next step of the litigation, and file a status report by October 18, 2024.

ENTERED:

      s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: September 27, 2024