**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

TARAS DOBROV, individually
and on behalf of all others similarly
situated,

            Plaintiff,

            v.

HI-TECH PAINTLESS DENT REPAIR,
INC., and MARK TSURKIS,

            Defendants.

No. 1:20-CV-00314

Judge Edmond E. Chang

**MEMORANDUM OPINION AND ORDER**

Taras Dobrov, an auto-repair technician, alleges that Hi-Tech Paintless Dent Repair, Inc., and its CEO Mark Tsurkis erroneously classified technicians as independent contractors rather than employees, impermissibly avoided paying overtime wages, and wrongly made deductions from their pay. R. 1, Compl.[1] In his view, these acts violated the Fair Labor Standards Act (known as the FLSA), the Illinois Minimum Wage Law, and the Illinois Wage Payment and Collection Act. Dobrov seeks to represent other technicians in a collective action under the FLSA as well as a class action under Illinois state law.[2] He now moves to certify a collective action and a class

---

[1]Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number.

[2]This Court has federal question jurisdiction of the federal claim under 28 U.S.C. § 1331, and supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a).

action consisting of two subclasses. R. 152, Pl.'s Mot. As explained below, Dobrov's motion for collective-action certification and class-action certification is granted.

## I. Background

Dobrov brings this suit on behalf of himself and other similarly situated technicians who performed work for Hi-Tech. Compl. ¶¶ 2–3. For nearly seven years, Dobrov repaired dent and hail damage to cars. Pl.'s Mot. at 1; R. 152-4, Dobrov Decl. ¶ 3. He worked exclusively for Hi-Tech, but the company's job needs fluctuated based on the severity of inclement weather. Pl.'s Mot. at 1–2; Dobrov Decl. ¶ 3; R. 152-1, Tsurkis Dep. at 33:8–:24.

Hi-Tech maintains a list of over a thousand active technicians, Tsurkis Dep. at 33:1–6, and at the height of hail season, up to 400 technicians may be working at any one time, Pl.'s Mot. at 2–3; R. 152-2, Opanasyuk Dep.at 42:18–:21. Technicians all perform the same tasks: invoicing, disassembling cars for repair, and performing the actual repairs. Pl.'s Mot. at 3; Tsurkis Dep. at 26:23–28:8.

The record shows that Hi-Tech also treated its technicians consistently. Hi-Tech paid technicians on a uniform scale under which more tenured technicians earned a larger commission. Pl.'s Mot. at 3; R. 51, Defs.' Ans. ¶ 15. But Hi-Tech does not pay technicians overtime because Hi-Tech classifies its technicians as independent contractors rather than employees. Pl.'s Mot. at 4; Tsurkis Dep. at 37:11–39:9, 107:5–108:18. Hi-Tech also did not require its technicians to clock their time, Pl.'s Mot. at 4; Tsurkis Dep. at 107:9–108:6, but Dobrov, for example, estimates that he worked about 85 hours a week, Pl.'s Mot. at 5; R. 152-8, Pl.'s Supp. Resp. to Defs.'

Interrogs. at 4–5. And beginning April 20, 2015, Hi-Tech imposed an "administrative" surcharge, which applied to every technician for every vehicle repaired. Pl.'s Mot. at 5; R. 152-10, Hi-Tech Interoffice Memo.

Dobrov contends that these policies common to technicians violated federal and state law, so he seeks to represent three different groups of similarly situated technicians. Under 29 U.S.C. § 216(b), Dobrov asks the Court to certify an FLSA collective action consisting of:

> All individuals who worked for Hi-Tech Paintless Dent Repair as PDR technicians and worked full-time during at least one workweek during the period from three years prior to the entry of the Court's order certifying the collective action to the date of judgment in this action.

Pl.'s Mot. at 6. Dobrov also asks this Court to certify a class action under Rule 23 of the Federal Rules of Civil Procedure. He proposes the following two subclasses:

> All individuals who worked for Hi-Tech Paintless Dent Repair as PDR technicians in Illinois and
>
> (1) worked full-time during at least one workweek during the period from January 15, 2017[,] to the date of judgment in this action … ; and/or
>
> (2) were subject to deductions of "administrative surcharges" from their wages during the period from April 20, 2015[, to] the date of judgment in this action ….

Pl.'s Mot. at 5–6.

## II. Legal Standard

Collective actions under the FLSA and class actions under Rule 23 have some "significant differences." *Vanegas v. Signet Builders, Inc.*, 113 F.4th 718, 726 (7th Cir. 2024) (quoting *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 70 n.1 (2013)). These differences start with how potentially interested parties get involved. A named

3

plaintiff in a class action "represents the rights of absent non-party plaintiffs who will be bound by the disposition of the case unless they opt out of the class." *Richards v. Eli Lilly & Co.*, — F.4th —, 2025 WL 2218500, at *1 (7th Cir. Aug. 5, 2025). Collective actions, however, are "a consolidation of individual cases" where each plaintiff "must affirmatively opt in to join." *Id.* (cleaned up).[3]

This difference affects how the filing of a lawsuit proposing a collective and a class tolls—or does not toll—the relevant statutes of limitations. The FLSA sets a three-year statute of limitations—but the limitations period does *not* toll for any individual person until he consents in writing to becoming a party to the collective action. *See* 29 U.S.C. §§ 255(a), 256(b). The Illinois Minimum Wage Law and the Illinois Wage Payment and Collection Act have three- and ten-year statutes of limitations, respectively. *See* 820 ILCS 105/12(a); 735 ILCS 5/13-206. And unlike a collective action under the FLSA, the statute of limitations for persons who may be members of a class action (if one is certified) tolled on the day that Dobrov filed his complaint: January 15, 2020. *See Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 550–51 (1974).

Certification may also proceed differently. For collective actions, courts sometimes employ a "two-step approach," where a plaintiff makes an initial showing that his situation is factually similar to other, prospective collective members. *See Richards*, — F.4th —, 2025 WL 2218500, at *2–3. If a plaintiff makes a satisfactory

---

[3] This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

showing of similarity, then notice will be issued to potential collective members. *Id.* at *2. They presumably will opt in, and discovery will proceed. *Id.* Then, at step two, courts will more rigorously review whether, by a preponderance of the evidence, the proposed collective members are similarly situated. *Id.* at *2, *6.

Hi-Tech contends that this Court must follow the two-step approach. R. 159, Defs.' Resp. at 4–6. But this is not the case—there is no blanket rule that *requires* taking two steps in every FLSA case. District courts instead may resolve disputes over similarity—applying a preponderance-of-the-evidence standard—without first sending notice to potential collective members. *Richards*, — F.4th —, 2025 WL 2218500, at *7. Courts enjoy "wide discretion to manage collective actions," *Alvarez v. City of Chicago*, 605 F.3d 445, 449 (7th Cir. 2010), and "[t]he watchword here is flexibility," *Richards*, — F.4th —, 2025 WL 2218500, at *8. Here, deciding the certification dispute in one step makes sense: discovery has closed, and the evidence relevant to whether technicians are similarly situated has been produced and is not "in the hands of individuals who are not yet parties to the action." *Id.* at *7–8.

Despite these differences in procedure between collective and class actions, the legal standards governing certification remain similar. Hi-Tech emphasizes the Supreme Court's admonition of the significant differences between the two actions. Defs.' Resp. at 4 (citing *Genesis Healthcare Corp.*, 569 U.S. at 70 n.1; *Vanegas*, 113 F.4th at 726). But the Supreme Court's observation came without any specific exposition on the differences for certification. *See Genesis Healthcare Corp.*, 569 U.S. at 70 n.1. It is of course true that certification of a collective action under the FLSA

sometimes presents a different set of questions from certification of a class action under Civil Rule 23.[4] But binding precedent from the Seventh Circuit confirms that, at the certification stage, collective and class actions can both be evaluated under the framework of Rule 23. *See Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 772 (7th Cir. 2013) ("[D]espite the difference between a collective action and a class action … there isn't a good reason to have different standards … and the case law has largely merged the standards …."); *Vanegas*, 113 F.4th at 726 (noting that *Genesis Healthcare* did not overrule *Espenscheid*).

To be entitled to collective or class certification, a plaintiff must satisfy each requirement of Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation—as well as one of the subsections of Rule 23(b). *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012) (cleaned up). "Failure to meet any of the Rule's requirements precludes … certification." *Harper v. Sheriff of Cook Cnty.*, 581 F.3d 511, 513 (7th Cir. 2009) (cleaned up).

"A class [or collective] may be certified only if the trial court is satisfied, *after a rigorous analysis*, that the prerequisites of Rule 23(a) have been satisfied." *Creative Montessori Learning Ctrs. v. Ashford Gear LLC*, 662 F.3d 913, 916 (7th Cir. 2011)

---

[4]For example, in FLSA cases—with the statute's emphasis on employment and its wide variety of exemptions—district courts sometimes ask "(1) whether the plaintiffs share similar or disparate factual and employment settings; (2) whether the various affirmative defenses available to the defendant would have to be individually applied to each plaintiff; and (3) fairness and procedural concerns." *Haugen v. Roundy's Ill., LLC*, 552 F. Supp. 3d 806, 808 (N.D. Ill. 2021) (cleaned up). The overarching question, however, remains whether the prospective collective members are "similarly situated." *Id.* (cleaned up).

(cleaned up) (emphasis in original). The named plaintiff bears the burden of showing by a preponderance of the evidence that all of Rule 23's requirements are satisfied. *See Comcast Corp. v. Behrend*, 569 U.S. 27, 33–34 (2013); *Messner*, 669 F.3d at 811. The Court "must make whatever factual and legal inquiries are necessary to ensure that requirements for class certification are satisfied before deciding whether a class should be certified, even if those considerations overlap the merits of the case." *Am. Honda Motor Co. v. Allen*, 600 F.3d 813, 815 (7th Cir. 2010); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011) (recognizing that class-certification analysis "[f]requently … will entail some overlap with the merits of the plaintiff's underlying claim"). In the end, the Court has "broad discretion to determine whether certification of a class-action lawsuit is appropriate." *Ervin v. OS Restaurant Servs., Inc.*, 632 F.3d 971, 976 (7th Cir. 2011) (cleaned up).

### III. Analysis

Because the proposed collective and class actions come with different proposed membership and scope, the Court will discuss each proposed group's certification separately.

### A. Nationwide FLSA Collective Action

Dobrov argues that a singular policy applied to nearly every technician working for Hi-Tech, including him, so whether that policy violates the FLSA is well-suited for a collective action. Pl.'s Mot. at 9. For its part, Hi-Tech contends that Dobrov (whose tenure ended in 2018) could not possibly have any common questions of fact or law with technicians who may have claims that accrued within the past three

7

years—which is the only set of technicians who would not be barred by the statute of limitations if they have not already opted in. Defs.' Resp. at 7–10. And absent that common thread, Hi-Tech argues that Dobrov does not present claims typical of other potential collective members. *Id.* at 8.

Hi-Tech does not, however, challenge whether there are sufficiently numerous technicians in the collective action or whether Dobrov and his counsel would adequately protect the class's interests. *See* Fed. R. Civ. P. 23(a)(1), (4). Dobrov meets those two requirements by a preponderance of the evidence. First, he has shown that Hi-Tech uses hundreds of technicians each year across the country, so the proposed collective action satisfies the numerosity requirement. Pl.'s Mot. at 2–3; Opanasyuk Dep. at 42:18–:21; *see also Mulvania v. Sheriff of Rock Island Cnty.*, 850 F.3d 849, 859 (7th Cir. 2017) ("[A] forty-member class is often regarded as sufficient."). Second, Dobrov is an adequate representative because he has diligently litigated this case and lacks any conflicting interest, and counsel similarly has competently litigated this case and is therefore adequate. *See Susman v. Lincoln Am. Corp.*, 561 F.2d 86, 90 ("Adequate representation depends on two factors: (a) the plaintiff's attorney must be … generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class." (cleaned up).

Returning to the typicality and commonality requirements, Dobrov has shown by a preponderance of the evidence that the proposed collective action involves common questions of fact or law and that his claims are typical of those of other technicians. *See* Fed. R. Civ. P. 23(a)(2)–(3). In moving to certify the collective action,

Dobrov presented evidence of a policy classifying *all* technicians as independent contractors. Pl.'s Mot. at 4; Tsurkis Dep. at 37:11–39:9, 107:5–108:18. Hi-Tech does not contest that the policy existed until at least 2021, the time at which its CEO was deposed and admitted that the company's policy was to classify all technicians as independent contractors. Tsurkis Dep. at 37:11–39:9. Although Hi-Tech argues that most technicians with timely claims fall outside the confines of any evidence produced during discovery—which closed nearly three years ago in September 2022, Defs.' Resp. at 7–10—Hi-Tech itself presents no evidence or reason to believe that the long-standing policy has changed. Hi-Tech does not, for example, argue that its policy of classifying technicians as independent contractors has since changed, even though a policy change like that would be highly relevant for defining the related Minimum Wage Law subclass. Nor has Hi-Tech moved to supplement the record with new evidence of any change, which possibly could defeat certification of the FLSA collective action. And lastly Hi-Tech has not supplemented discovery under Civil Rule 26(e)(1) that would provide evidence of a policy change of that kind.

Without any argument that Hi-Tech's policies have since changed, Dobrov presents a policy that applied during and after his tenure with Hi-Tech. Whether the treatment of technicians as independent contractors violates the FLSA, in light of the work that technicians perform, is a question capable of class-wide resolution. And because the same policy purportedly applied to Dobrov as to more recent technicians,[5]

---

[5]In reply, Dobrov concedes that he seeks to certify a collective action of only himself and technicians who worked for Hi-Tech in the three years leading up to this Court's order.

his claims under the FLSA are typical of other technicians and potential collective members.[6]

Next, the FLSA collective action, which seeks damages, meets the requirements under Rule 23(b)(3) (as applied in the FLSA collective context) of predominance and superiority. Hi-Tech contends that the determination of each technician's damages is so individualized that this issue predominates over the common questions of fact or law and that a class action is thus not superior. Defs.' Resp. at 11–12. But as Dobrov correctly argues, Hi-Tech encounters—and cannot overcome—two hurdles. First, the prospect of individualized damages "does not itself justify the denial of certification." *Mulvania*, 850 F.3d at 859 (cleaned up). Hi-Tech does not develop an argument that the damages issue in this case is in fact so individualized that it predominates over the common issues pertaining to liability. Second, because Hi-Tech has not kept track of its workers' hours, there is a lesser concern about the individualized nature of damages. Instead, Dobrov argues, and Hi-Tech does not refute, that Hi-Tech's failure to keep records permits an estimate of hours worked by "just and reasonable inference." Pl.'s Mot. at 21–22 (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946), *superseded on other grounds by* Portal-to-Portal Act of 1947,

---

R. 162, Pl.'s Reply at 9–10. He does not, instead, make an argument about whether earlier-working technicians may join the collective action via equitable tolling. It is unclear whether potential plaintiffs could assert equitable tolling under the FLSA, *see* 29 U.S.C. § 256(b), but the Seventh Circuit has recently acknowledged the possibility. *See Richards*, — F.4th —, 2025 WL 2218500, at *8.

[6]Because this Court certifies the FLSA collective action, there is no need to address Hi-Tech's arguments about whether an individual FLSA claim could support supplemental jurisdiction over a state-law class action. Defs.' Resp. at 10–11.

29 U.S.C. §§ 251–62). If Hi-Tech is found to have violated the FLSA, then it shoulders the burden of disproving the reasonable inferences provided by plaintiffs who have joined the collective action. *Anderson*, 328 U.S. at 687–88. The collective action thus would face a less exacting burden in proving damages. Because Hi-Tech fails to identify any other individualized issues, the common issues that Dobrov presents predominate.

There is no dispute that the collective action is superior to individual suits. Given the risks and costs of litigation, technicians who may have lost thousands of dollars would still lack any incentive to bring their own individual suit. *Espenscheid*, 705 F.3d at 776. By contrast, deciding the questions common to each technician in one suit promotes "economies of time, effort, and expense, and promote[s] uniformity of decision." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997) (cleaned up). Dobrov's motion to certify a collective action under the FLSA thus is granted.

### B. State Law Class Action

Hi-Tech does not advance any independent argument to deny certification of the state law class action consisting of two subclasses. Both subclasses raise claims under Illinois state law and pertain to technicians who performed work in Illinois. Even so, this Court must confirm after a rigorous analysis that certification is proper, and that assessment rests on Dobrov's ability to support certification by a preponderance of the evidence. Dobrov has done so here.

First up are the Rule 23(a) elements. Dobrov presented evidence that around 125 technicians performed work on behalf of Hi-Tech for customers in Illinois, more

than enough to satisfy numerosity.[7] Pl.'s Mot. at 11; R. 153, Exh. K; *see also Mulvania*, 850 F.3d at 859. And there is no dispute that there are common questions of fact or law: (1) the existence of the policies classifying technicians as independent contractors and imposing administrative surcharges and (2) whether those policies violate the Minimum Wage Law or the Wage Collection Act, respectively. For the reasons discussed earlier, Dobrov's claims are typical of other Hi-Tech technicians. Moreover, both he and counsel are adequate representatives of the class.

Second, moving on to the elements under Rule 23(b)(3), Dobrov has shown by a preponderance of the evidence that common issues predominate over individual ones and that a class action is superior to individual suits. The reasons are the same for the state law class action as for the FLSA collective action: the concern about individualized damages is comparatively small in this case, the common questions about Hi-Tech's liability or lack thereof can be efficiently answered on a class-wide basis, and each technician likely would not recover enough to warrant individual suits. Dobrov thus has shown that the proposed class meets the requirements of Rule 23.

---

[7]Even if a higher bar were required to determine which technicians may have performed enough work in Illinois that they may have plausibly worked overtime and thus could be members of the IMWL class, the evidence shows that the class is so numerous that joinder of all members is impracticable. On a closer look at the list of technician projects provided by Hi-Tech and cited by Dobrov, R. 153, Exh. K, nearly four dozen technicians each performed more than five repairs in Illinois. The evidence does not provide beginning or end dates on the projects, and Hi-Tech does not offer any clarification in its response.

12

## IV. Conclusion

Dobrov's motion for collective and class certification, R. 152, is granted. The

Court certifies the following collective action under 29 U.S.C. § 216(b):

> All individuals who worked for Hi-Tech Paintless Dent Repair as paintless dent repair technicians and worked full-time during at least one workweek on or after September 24, 2022.

And the Court certifies the following class and subclasses under Rule 23(b)(3):

> All individuals who worked for Hi-Tech Paintless Dent Repair as paintless dent repair technicians in Illinois and
>
> (1) worked full-time in Illinois during at least one workweek during the period from January 15, 2017, to the date of judgment in this action (Minimum Wage Subclass).
>
> (2) were subject to deductions of "administrative surcharges" from their wages earned for work in Illinois during the period from April 20, 2015, to the date of judgment in this action (Wage Payment Subclass).

The Court also appoints Dobrov's attorneys from the law firm of Stephan Zouras, LLC

as class counsel. With this decision in place, the parties shall engage in settlement

negotiations. The parties shall file a joint status report by October 17, 2025, to update

the Court on their settlement discussions, including referral for a settlement confer-

ence to the assigned magistrate judge, or if settlement appears unlikely, to propose

the next step of the litigation and to provide an estimate of trial length. The parties

also shall confer over the class-notice form and format, as well as timing, and include the results of the conferral in the status report.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: September 24, 2025

14